IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| DELTA PRODUCE, LP, et al., | ) | CV. NO. 5:12-cv-01127-DAE |
| | ) | Bankr. No. 12-50073-a998 |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| KINGDOM FRESH PRODUCE, et al., | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BEXAR COUNTY, et al., | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

MEMORANDUM OPINION AND ORDER AFFIRMING IN PART AND
VACATING IN PART THE BANKRUPTCY COURT'S ORDER GRANTING
SPECIAL PACA TRUST COUNSEL'S FIRST INTERIM APPLICATION FOR
ATTORNEY FEES

Kingdom Fresh Produce, Inc. ("Kingdom Fresh"), I. Kunik Company,

Inc. ("I. Kunik"), Five Brothers Jalisco Produce Co. Inc. d/b/a Bonanza 2001

("Five Brothers"), Rio Bravo Produce Limited, LLC ("Rio Bravo"), and G.R.

Produce, Inc. ("G.R. Produce") (collectively, "PACA Claimants") appeal the

bankruptcy court's September 25, 2012 Order granting the First Fee Application of

Special PACA Trust Counsel.  (Bankr. Dkt. # 320.)[1]  The bankruptcy court's Order granted Special PACA Trust Counsel ("Special Counsel"), Craig A. Stokes, attorney fees to be paid from non-estate trust assets under the Perishable Agricultural Commodities Act of 1930 ("PACA"), 7 U.S.C. § 499(a)–(t).  Having considered the PACA Claimants' and Special Counsel's arguments, the Court **VACATES** the Order of the bankruptcy court.

<u>BACKGROUND</u>

This matter arises from three PACA-related lawsuits filed in the United States District Courts for the Western District of Texas against Delta Produce LP ("Delta"), a local produce company.  Muller Trading Company, Inc. ("Muller") filed the first PACA-related lawsuit against Delta, Walter Jensen, and Superior Tomato-Avocado on January 28, 2011, in Austin, Texas.  (Case No. 1:11-cv-01114-SS.)  Wilson-Davis Company ("Wilson-Davis") filed the second lawsuit against Delta, Walter Jensen, Superior Tomato-Avocado, and STA Management, amongst others on December 28, 2011, in San Antonio, Texas.  (Case No. 5:11-cv-01125-XR.)  Rio Bravo, one of the PACA Claimants in the instant action, filed the third lawsuit against Delta, Walter Jensen, Superior Tomato-Avocado, and STA Management also on December 28, 2011, in San Antonio.  (Case No. 5:11-cv-01126-XR.)  Since Muller's lawsuit was the first to be

---

[1]      Except as otherwise noted, all citations are to the bankruptcy docket in Case No. SA:12-BK-50073-LMC.

filed, Judge Rodriguez consolidated and transferred the Wilson-Davis and Rio

Bravo cases to Judge Sparks in Austin. (Case No. 5:11-cv-01125-XR, Dkt. # 10;

Case No. 5:11-cv-01126-XR, Dkt. # 9.)

On January 3, 2012, Delta filed for bankruptcy under Chapter 11 of

the United States Bankruptcy Code in the United States Bankruptcy Court for the

Western District of Texas (Bankr. Dkt. # 1). Delta then moved to impose an

automatic stay of the consolidated district court proceedings under 11 U.S.C.

§ 362. (Case No. 1:11-cv-01114-SS, Dkt. ## 24, 26.) Two days later, Delta asked

the district court to abate its proceedings and allow various creditors, including

PACA creditors, to assert their claims before the Bankruptcy Court in San

Antonio. (Id.) Counsel for PACA Claimant Rio Bravo consented to the transfer.

(Id.) Judge Sparks transferred the case to Judge Rodriguez in San Antonio. (Case

No. 1:11-cv-01114-SS, Dkt. # 27.) Judge Rodriguez then referred the case to the

bankruptcy court in San Antonio, noting that "the parties apparently agree that the

Bankruptcy Court would be the appropriate and preferable place to adjudicate the

claims presented in this case." (Case No. 5:12-cv-00046-XR, Dkt. # 28.)

After Judge Rodriguez referred the PACA claims to the bankruptcy

court, Delta filed a proposed PACA Claim Procedure in bankruptcy court. (Bankr.

Dkt. # 31.) On January 24, 2012, the bankruptcy court held a hearing to consider a

Motion for Orders Establishing a Deadline to File PACA Trust Claims and for

3

Procedures to Resolve those Claims and for the Appointment of Special Counsel.

The following day, the court issued an order directing Special Counsel to

undertake various tasks to preserve and collect PACA trust assets, negotiate and

compromise debts owed by an account holder of Delta, consider and review claims

asserted under the PACA trust, and provide status reports to PACA creditors.

(Bankr. Dkt. # 52.)  Paragraph 15(b) of the order specified:

> Special PACA Counsel shall be "entitled" to paid attorney's fees and
> costs from the PACA trust funds for the services rendered pursuant to
> this Order.  The Court will determine the reasonable "amount" of such
> attorney's fees and costs.  To be paid, Special PACA Counsel shall
> file a motion(s) for attorney's fees and costs, [and] should attach time
> sheets that have reasonably detailed time entries and which reflect
> time in increments of ".1" of an hour.  Stokes may file interim
> motions for attorney's fees and costs.

(Id. (emphasis added).)  No party objected to this order.

After the bankruptcy court's Order for a PACA Claims Procedure

established the timeline for adjudicating PACA claims, Delta informed potential

PACA creditors of the pending PACA claim procedure.  From January to March

2012, PACA Creditors filed claims against Delta as debtor totaling $1,676,015.25.

Special Counsel, acting as Trustee for the PACA trust, negotiated PACA claims

with Delta and PACA creditors.

On August 14, 2012, Special Counsel filed its First Interim

Application for attorney fees.  (Bankr. Dkt. # 284.)  Special Counsel sought

$95,978.00 in attorney fees and $2,492.97 in expenses for work completed

4

between January 3, 2012, and August 7, 2012, to be paid from the PACA trust.
(Id.)

PACA Claimant Kingdom Fresh objected to Special Counsel's First
Interim Application on the ground that the PACA trust funds should not be used to
pay Special Counsel's fees.  (Bankr. Dkt. # 294.)  Kingdom Fresh argued: (1) the
Bankruptcy Court lacks subject-matter jurisdiction to use non-estate assets beyond
the reach of bankruptcy powers to satisfy the administrative expense claims against
the bankruptcy estate; (2) the PACA trust assets that the Debtors hold as trustees
cannot be used to pay the Debtors' attorneys or any other administrative expense
claims against the bankruptcy estate; and (3) the Debtors' Counsel already had a
pre-existing duty to collect the Debtors' accounts receivable and thus cannot dip
into the non-estate PACA trust funds to be paid for that work for the Debtors.  (Id.)

On September 21, 2012, the bankruptcy court held a hearing to
consider Special Counsel's First Interim Application for attorney fees.  (Bankr.
Dkt. # 381 (transcript).)  At the hearing, Kingdom Fresh reiterated its concerns that
the bankruptcy court did not have subject-matter jurisdiction over the PACA trust
funds and therefore could not authorize the distribution of PACA trust funds to pay
the First Fee Application.  (Id. at 6–8.)

5

Over Kingdom Fresh's objections, the bankruptcy court granted

Special Counsel's First Interim Application for attorney fees.  (Bankr. Dkt. # 320.)

This appeal ensued.  (Bankr. Dkt. # 340.)

STANDARD OF REVIEW

On appeal, this Court reviews the bankruptcy court's findings of fact

under a clearly erroneous standard and reviews its conclusions of law de novo.  In

re Scopac, 624 F.3d 274, 279–80 (5th Cir. 2010).

DISCUSSION

PACA Claimants maintain that because the PACA trust assets are

excluded from the bankruptcy estate, the bankruptcy court did not have jurisdiction

to award attorney fees from the PACA trust res.  To address PACA Claimants'

arguments, the Court will first discuss PACA's statutory framework in the context

of bankruptcy proceedings and then turn to the scope of the bankruptcy court's

jurisdiction.

A.     The Perishable Agricultural Commodities Act ("PACA")

Congress designed PACA to regulate the produce industry and

promote fair dealings in transactions involving fruits and vegetables.

Golman-Hayden Co. v. Fresh Source Produce Inc., 217 F.3d 348, 350 (5th Cir.

2000).  As stated in the House Report to the 1984 amendments to the Act, PACA

was enacted

6

> to encourage fair trading practices in the marketing of perishable
> commodities by suppressing unfair and fraudulent business practices
> in marking of fresh and frozen fruits and vegetables . . . and providing
> for collecting damages from any buyer or seller who fails to live up to
> his contractual obligations.

H.R. Rep. No. 543, 98th Cong., 2d Sess. 3 (1983).  To this end, PACA requires

buyers of produce to make "full payment promptly," Bocchi Americas Assocs. Inc.

v. Commerce Fresh Mktg. Inc., 515 F.3d 383, 387–88 (5th Cir. 2008) (quoting 7

U.S.C. § 499b(4)), and if a buyer fails to tender prompt payment, the seller may

file a complaint with the United States Department of Agriculture or file a civil suit

against the buyer, id. (citing 7 U.S.C. § 499e(a)–(b)).

Because of the proclivity of buyers to default before tendering full

payment to sellers, Congress added two powerful tools to enforce buyers' payment

obligations and give sellers additional protections.  Id.  First, PACA establishes a

scheme in which a buyer of produce on credit is required to hold the produce and

its derivatives/proceeds in trust for the unpaid seller.  7 U.S.C. § 499e(c)(2);

Endico Potatoes v. CIT Group/Factoring, 67 F.3d 1063, 1067 (2d Cir. 1995).

Ordinary principles of trust law apply to the trusts created by PACA so that the

buyer holds legal title to the produce and its derivatives/proceeds, but the seller

retains an equitable interest in the trust property pending payment.  Endico

Potatoes, 67 F.3d at 1067; see also Reaves Brokerage Co., Inc. v. Sunbelt Fruit &

Vegetable Co., Inc., 336 F.3d 410, 413 (5th Cir. 2003) (holding that § 499e(c)(2)

7

creates, "immediately upon delivery, a nonsegregated 'floating' trust in favor of sellers on the perishable commodities sold and the products and proceeds derived from the commodities"). Second, "if the seller is not paid promptly, the buyer must preserve trust assets, and the seller has a 'superpriority' right that trumps the rights of the buyer's other secured and unsecured creditors." Bocchi Americas Assocs. Inc., 515 F.3d at 388; accord 7 U.S.C. § 499e(c)(1); see also Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997) ("The PACA grants the sellers of such commodities the right to recover against the purchasers and puts the sellers in a position superior to all other creditors.").

Sellers are only entitled to the trust assets and "super-priority" status if they comply with certain procedural requirements. An unpaid seller must demonstrate that:

(1) the commodities sold were perishable agricultural commodities;
(2) the purchaser of the perishable agricultural commodities was a commission merchant, dealer or broker;
(3) the transaction occurred in interstate or foreign commerce;
(4) the seller has not received full payment on the transaction; and
(5) the seller preserved its trust rights by giving written notice to the purchaser within the time provided by law.

7 U.S.C. § 499e. If a seller satisfies § 499e's requirements, however, a trust automatically arises in favor of the seller until full payment has been received. Id. § 499e(c)(2); see also In Re Milton Poulous, Inc., 947 F.2d 1351, 1352 (9th Cir. 1991).

8

Because trust principles apply and the debtor only holds legal—not equitable—title, if the debtor files for bankruptcy, the PACA trust assets are excluded from the bankruptcy estate.  See, e.g., 11 U.S.C. § 541(d) ("Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, . . . becomes property of the estate . . . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."); Ruby Robinson Co., Inc. v. Herr, 453 F. App'x. 463, 465 (5th Cir. 2011) ("Ordinary principles of trust law apply to trusts created under PACA, so that for instance the trust assets are excluded from the estate should the dealer go bankrupt." (quoting Sunkist Growers, Inc. v. Fisher, 104 F.3d 280, 282 (9th Cir. 1997))); In re Kornblum & Co., 81 F.3d 280, 284 (2d Cir. 1996) ("[I]n the event of the Produce Debtor's bankruptcy, the Bankruptcy Code excludes PACA trust assets from the bankruptcy estate."); see generally United States v. Whiting Pools, Inc., 462 U.S. 198, 205 n.10 (1983) (The "Bankruptcy Code plainly excludes [from the bankruptcy estate] property of others held by the debtor in trust at the time of the filing of the [bankruptcy] petition." (internal citation and quotation marks omitted)).

B.     Bankruptcy Court Jurisdiction and Judicial Power

PACA Claimants argue that because PACA trust assets are excluded from the bankruptcy estate, the bankruptcy court is foreclosed from adjudicating

any PACA claims.  However, PACA Claimants' argument overlooks the statutory framework of bankruptcy court jurisdiction.  As outlined below, the bankruptcy court's jurisdiction is not limited solely to adjudicating assets within the bankruptcy estate.

"The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute."  Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995).  To determine whether a bankruptcy court has jurisdiction, this Court must first examine whether the district court had jurisdiction under 28 U.S.C. § 1334(b).  See id.  (holding that bankruptcy courts derive their jurisdiction from the statutory jurisdiction of the district court).  If jurisdiction exists under § 1334(b), a district court may refer the matter to a bankruptcy court.  28 U.S.C. § 157.  The extent to which a bankruptcy court can solely adjudicate the matter, or must recommend a particular disposition to a district court, depends on 28 U.S.C. § 157's jurisdictional grant, namely whether the matter delegated to the bankruptcy court is a core or non-core proceeding.  Id.

1.   Section 1334(b) and "Related to" Cases Under Title 11

Pursuant to 28 U.S.C. § 1334, district courts have jurisdiction in all civil proceedings "arising under title 11 [the Bankruptcy Code], or arising in, or related to cases under title 11."  For the purpose of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to

10

distinguish between proceedings "arising under," "arising in a case under," or "related to a case under" Title 11, because each component operates conjunctively. In re Wood, 825 F.2d 90, 93 (5th Cir. 1987).  Thus, jurisdiction exists if the matter is at least "related to" the bankruptcy.  Id.

Section 1334 does not define "related" matters.  The Fifth Circuit, however, has adopted the "related to" test the Third Circuit developed in Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir. 1984).  See Wood, 825 F.2d at 93.  Pacor holds that "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedoms of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."  743 F.2d at 994.  The "related to" category of cases is quite broad and includes proceedings in which the outcome "could conceivably have any effect on the estate being administered in bankruptcy."  In re Canion, 196 F.3d 579, 585 (5th Cir. 1999) (quoting Pacor, 743 F.2d at 994).  "Certainty or even likelihood of such an effect is not a requirement."  Id. at 587 n.30.

The bankruptcy court in the instant action had "related to" jurisdiction.  Even though PACA Claimants are correct that PACA trust assets are excluded from the bankruptcy estate, see Ruby Robinson Co., 453 F. App'x. at 465, this exclusion alone does not defeat the bankruptcy court's jurisdiction.  Pacor held that "the proceeding need not necessarily be against the debtor or against the

debtor's property."  Id. (emphasis added).  In fact, "related to" jurisdiction can still

exist when the property in question is not necessarily the property of the

bankruptcy estate, as long as the third-party suit could conceivably affect the

administration of bankruptcy estate.  See, e.g., Celotex, 514 U.S. at 308–10

(holding that bankruptcy court had jurisdiction to issue injunction prohibiting

execution of supersedeas bond that was not part of the debtor's Chapter 11

bankruptcy estate because bankruptcy court's jurisdiction extends to "more than

the simpl[e] proceedings involving the property of the estate"); In re Zale Corp., 62

F.3d 746, 757–58 (5th Cir. 1995) (holding that even though certain contract claims

were not part of the debtor's bankruptcy estate, because the claims could

conceivably affect on the estate, the bankruptcy court had jurisdiction to

temporarily enjoin such claims).

   In re Southland + Keystone, the appellants argued that because the

PACA trust was not included within the bankruptcy estate, the bankruptcy court

lacked jurisdiction.  132 B.R. 632, 638 (B.A.P. 9th Cir. 1991).  But the Bankruptcy

Appellate Panel for the Ninth Circuit found the appellant's position "untenable."

Id.  The court explained that

> PACA proceeds are not property of the estate does not mean the
> bankruptcy court does not have jurisdiction to make that
> determination.  Under Appellant's reasoning, any bankruptcy court
> order determining that assets are not property of a bankruptcy estate
> would be of no effect because the court would not have had
> jurisdiction to enter the order.  Clearly, a determination of whether

12

assets are property of a bankruptcy estate concerns administration of the estate.

Id. (emphasis added).

As in Southland + Keystone, the bankruptcy court in the instant action had jurisdiction to determine whether the PACA claims are PACA trust assets and, thus, excluded from the bankruptcy estate.  See In re Strategic Techns., Inc., 142 F. App'x 562, 565 (3d Cir. 2005) (holding that bankruptcy court had jurisdiction to determine whether trust assets were part of bankruptcy estate); In re Carolina Produce Distrib., 110 B.R. 207, 210 (Bankr. W.D.N.C. 1990) ("The Bankruptcy Court, therefore, will need to consider whether Plaintiff Monterey or any other potential claimant, properly and timely has perfected its interest in the [PACA] trust.  The Bankruptcy Court also will need to consider the scope of the PACA-created trust." (emphasis added)); see also Maislin Indus., U.S. v. A.J. Hollander Co., 69 B.R. 771, 775 (Bankr. E.D. Mich. 1986) (holding that debtor's adversary proceedings to recover on accounts receivable that are encumbered by security interest are related proceedings over which the bankruptcy court has jurisdiction, where validity and extent of security interest is yet to be determined).

It is appropriate to make this threshold showing in bankruptcy court, because if the requirements for PACA trust protection are not met, the PACA claimant's assets that were formerly part of the PACA trust become part of the debtor's bankruptcy estate.  See In re Matter of United Fruit & Produce Co., Inc.,

13

86 B.R. 14, 16 (Bankr. D. Conn. 1988) (holding that a bankruptcy court

jurisdiction was proper because "[a] possibility exists that equity in the receivables

may remain for the debtor's estate").  Furthermore, once the PACA trust claims are

settled, the remaining funds in the PACA trust res belong to the debtor's estate.  In

re Meyer's Bakeries, Inc., 402 B.R. 314, 319 (Bankr. W.D. Ark. 2009) (holding

that, in a bankruptcy case, after all eligible suppliers are paid in full the remaining

res of a PACA trust becomes property of the bankruptcy estate).

   As a practical matter, the bankruptcy court did adjudicate whether

certain claims were entitled to PACA trust protection.  As outlined in the

bankruptcy court's Order Establishing a Deadline to File PACA Trust Claims

(Bankr. Dkt. # 52), the court ordered that Delta must notify all potential creditors

(as listed on Delta's accounts payable schedule) of the opportunity to file PACA

trust claims by March 2, 2012.  The court permitted Special Counsel to file any

objections (on behalf of Delta) and Produce Creditors to file objections as well.

(Id.)  Throughout March and April 2012, the bankruptcy court received objections

from Special PACA Counsel and Produce Creditors.  On July 6, 2012, the court

issued an order settling many of the objections made by the parties, including

whether prejudgment interest applies, whether ineligible goods were included in

the PACA claims, and whether PACA Claimants' attorney fees were included in

their PACA claims.  (Bankr. Dkt. # 274.)

Because whether PACA Claimants' claims were entitled to PACA trust protection "could conceivably have [had an] effect on the estate being administered in bankruptcy," Canion, 196 F.3d at 585, and arguably did have an effect on the bankruptcy estate, the bankruptcy court had "related to" jurisdiction over the PACA claims.

## 2. Section 157 and Core vs. Non-Core Proceedings

Although § 1334 delineates whether jurisdiction exists, a bankruptcy judge's power to fully adjudicate a particular matter depends on the type of proceeding under 28 U.S.C. § 157(b)–(c).[2] Section 157 ensures that a bankruptcy court acts with the appropriate adjudicative authority in considering claims in bankruptcy.  If the matter is a core proceeding, the bankruptcy court can exercise full judicial power.  Id. § 157(b)(1). If the matter is a non-core proceeding, the bankruptcy judge has the limited power to hear the case and must submit proposed findings of fact and conclusions of law to the district court.  Id. § 157(c)(2).

---

[2]          Special Counsel argues that the bankruptcy court exercised appropriate equitable powers under 11 U.S.C. § 105(a).  But this argument confuses a bankruptcy judge's judicial powers under § 105 with subject-matter jurisdiction under §§ 1334 and 157.  See In re Zale Corp., 62 F.3d 746, 751 (5th Cir. 1995) ("Subject matter jurisdiction and power are separate prerequisites to the court's capacity to act.  Subject matter jurisdiction is the court's authority to entertain an action between the parties before it.  Power under section 105 is the scope and forms of relief the court may order in an action in which it has jurisdiction." (quoting In re American Hardwoods, Inc., 885 F.2d 621, 624 (9th Cir. 1989))).

For a bankruptcy court to have core jurisdiction over a proceeding, the proceeding must "arise under title 11" or "arise in a title 11 case." 28 U.S.C. § 157(b)(1). A proceeding "arises under" Title 11 if the claim asserted is created by or based on a provision of the bankruptcy code; a proceeding "arises in" a case under title 11 if it is not based on any right expressly created by the bankruptcy code but has no existence outside of the bankruptcy case. Wood, 825 F.2d at 96–97.

The bankruptcy court and Special Counsel concentrated much of their analysis on whether adjudicating the PACA claims was a core or non-core proceeding. But the distinction between core and non-core is irrelevant if the parties consented to the bankruptcy court's adjudication. See id. § 157(c)(2) ("[T]he district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments." (emphasis added)); see also Majestic, 835 F.2d at 90 (noting that when parties consent to the bankruptcy court's adjudication, it is immaterial whether the matter is core or non-core).

Here, at least one PACA Claimant, Rio Bravo,[3] explicitly consented to the bankruptcy court's adjudicative authority. (Case No. 1:11-cv-01114-SS, Dkt. # 27 at 2 (Order by Judge Sparks transferring case to Judge Rodriguez

---

[3]        Rio Bravo is the only PACA Claimant who had filed a PACA claim in district court. The rest of PACA Claimants filed their claims in bankruptcy court.

"finding that all parties had agreed to the procedure of consolidating all cases in San Antonio with a reference to the Bankruptcy Court in San Antonio").); (Case No. 5:12-cv-00046-XR, Dkt. # 28 at 2 (Order by Judge Rodriguez transferring case to bankruptcy court, noting that "the parties apparently agree that the Bankruptcy Court would be the appropriate and preferable place to adjudicate the [PACA] claims presented in this case").). The rest of PACA Claimants submitted their PACA claims directly to the bankruptcy court sometime between February and March 2012. (Compare Bankr. Dkt. # 52 at 2 ¶¶ 1–2 (outlining claims procedure deadline), with Bankr. Dkt. # 163 (summary of PACA claims submitted March 22, 2012).)

      Moreover, a party may waive the right to a core vs. non-core determination by failing to make a timely motion. See 21 U.S.C. § 157(b)(3) ("The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11." (emphasis added)); In re Mullarkey, 536 F.3d 215, 222 (3d Cir. 2008); see also In re Sheridan, 362 F.3d 96, 100 (1st Cir. 2004) ("[T]he protections afforded by the Northern Pipeline core/non-core distinction may be waived or forfeited, either by (i) consenting to the bankruptcy court's treatment of an otherwise non-core

proceeding as core, or (ii) failing to raise or pursue the issue adequately on appeal.").

On January 25, 2012, the bankruptcy court entered its order calling for submissions of PACA claims to be fully adjudicated by the bankruptcy court. (Bankr. Dkt. # 52.)  PACA Claimants did not object to the bankruptcy court exercising powers consistent with a core proceeding until September 4, 2012. (Dkt. # 294.)  In fact, PACA Claimants Kingdom Fresh, I. Kunik, and Five Brothers sought to avail themselves of the bankruptcy court's adjudicative authority by filing substantive responses to Special Counsel's assessment of their PACA claims.  (Bankr. Dkt. # 207 (requesting that the court deny Special Counsel's objections and grant "any other relief as the Court deems appropriate upon consideration of this matter").)  Given that PACA Claimants had nearly nine months to object to the bankruptcy court's exercise of judicial power and PACA Claimants availed themselves of that power, the Court finds that PACA Claimants waived any objection to the bankruptcy court exercising full adjudicative authority under § 157(b).

PACA Claimants' arguments that objections to subject-matter jurisdiction may be asserted at any time do not apply to a § 157 analysis.  "A [core vs. non-core] determination does not affect the bankruptcy court's power to hear the case.  Rather, it affects the form of the bankruptcy court's disposition, i.e.,

18

whether it is final and appealable to the district court, or a report and recommendation to be reviewed by the district court."  Mullarkey, 536 F.3d at 222.

In conclusion, the bankruptcy court had subject-matter jurisdiction under § 1334 and properly exercised its judicial power under § 157.

C.    Awarding Special Counsel Attorney Fees from PACA Trust

The Court must first address Special Counsel's arguments that PACA Claimants' objections are barred by the doctrine of judicial estoppel.

1.  Judicial Estoppel

Special Counsel argues that PACA Claimants' objections to paying Special Counsel with PACA trust funds is barred by judicial estoppel.  "Judicial estoppel is an equitable doctrine that 'prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding.'"  Hopkins v. Cornerstone Am., 545 F.3d 338, 347 (5th Cir. 2008) (quoting Hall v. GE Plastic Pac. PTE Ltd., 327 F.3d 391, 396 (5th Cir. 2003)).  The purpose of the doctrine is to "protect . . . the essential integrity of the judicial process" by reducing the "risk of inconsistent court determinations."  New Hampshire v. Maine, 532 U.S. 742, 750–51 (2001) (internal citation and quotation marks omitted). Generally, the Fifth Circuit recognizes "at least two requirements to invoke the doctrine: (1) the party's position must be clearly inconsistent with its

previous one, and (2) the previous court must have accepted the party's earlier

position." Id. (quoting Hall, 327 F.3d at 396).

                In support of the first part of the judicial estoppel test, Special

Counsel asserts that PACA Claimant Kingdom Fresh has "flip-flopped in their

position regarding the use of PACA trust funds for payment of Special Counsel's

fee" by first "expressly consenting" to the use of PACA trust funds when Kingdom

Fresh participated in the drafting of the PACA Order and then later objecting.

Special Counsel cites an email from Kingdom Fresh's counsel, Kevin Kelly, to

several other attorneys involved in the litigation—not to the court—wherein Mr.

Kelly voiced six concerns regarding the proposed order.  (Dkt. # 13-1.)  But even if

PACA Claimant Kingdom Fresh did "expressly consent"[4] or knew that Special

Counsel's fees would come from the PACA trust fund, Special Counsel's

argument fails the second part of the judicial estoppel inquiry.  There is no

evidence in the record that the bankruptcy court's January 25 Order permitting

Special Counsel's fee to be paid out of the PACA trust "accepted," or relied on,

Kingdom Fresh's earlier "position."  This is primarily due to the fact that prior to

the Court's January 25 Order, Kingdom Fresh had not advanced any position to the

court.  Although the bankruptcy court's Order was predicated on a "joint" Motion

---

[4]         This Court need not and does not offer any opinion regarding whether
Kingdom Fresh did or did not indicate consent to the other attorneys regarding the
payment of Special Counsel's fees out of the PACA trust.

for Orders Establishing a Deadline to File PACA Trust Claims filed on January 19, 2012 by "the two Debtors and PACA Claimants" (Bankr. Dkt. # 31), the PACA claimants that agreed to the positions argued in the motion did not include any PACA Claimants currently before this Court.[5]  Accordingly, Special Counsel's judicial estoppel argument fails.

> 2.  <u>Special Counsel's Attorney Fees from PACA trust</u>

The Court next addresses the substantive merits of PACA Claimants' objections to the bankruptcy court's Order granting Special Counsel attorney fees from the PACA trust.

Generally, attorney fees are granted only when provided by statute. <u>Alyeska Pipeline Serv. Co. v. Wilderness Soc'y</u>, 421 U.S. 240, 249 (1975).  PACA does not explicitly provide for attorney fees.  <u>Golman-Hayden Co., Inc.</u>, 217 F.3d at 352.  Nonetheless, PACA does state that claimants are entitled to "full payment of the sums owing <u>in connection with</u> perishable agricultural commodities transactions."  7 U.S.C. § 499e(c)(2) (emphasis added).

---

[5]        The PACA Claimants that did agree to the motion include: Wilson Davis Co.; Averrit Brokerage Co., Inc.; A&A concepts, LLC; Greenhouse Produce Company, LLC; Juniper Tomato Grower, Inc.; Mecca Family Farms, Ltd.; London Fruit, Inc.; Triple H Produce, LLC; and The Pumpkin Patch, LLP.  (Bankr. Dkt. # 31 at 9.)  PACA Claimants were, however, present at the hearing to discuss the Motion, but did not address the bankruptcy court.  (<u>See</u> Bankr. Dkt. # 381 (transcript of hearing held on September 21, 2012).)

The Fifth Circuit has not yet ruled on whether attorney fees are included as "sums owing in connection with" a perishable agricultural transaction under PACA.  Several sister circuit courts, however, have affirmed that attorney fees <u>for PACA claimants</u> are recoverable.  See <u>Coosemans Specialties, Inc. v. Gargiulo</u>, 485 F.3d 701, 709 (2d Cir. 2007) ("[W]here the parties' contracts include a right to attorneys' fees, they can be awarded as 'sums owing in connection with' perishable commodities transactions under PACA."); <u>Country Best v. Christopher Ranch, LLC</u>, 361 F.3d 629, 633 (11th Cir. 2004) (finding that Congress intended to include attorney fees and prejudgment interest in a PACA claimant's claim as long as they are bargained for); <u>Middle Mountain Land & Produce, Inc. v. Sound Commodities, Inc.</u>, 307 F.3d 1220, 1223–24 (9th Cir. 2002) (holding that Congress drafted PACA broadly to include not only the value of commodities sold but also expenses in connection with the sale of the commodities—including attorney expenses).

But these decisions do not address whether Special Counsel, acting as a <u>trustee</u> for the PACA trust, is entitled to attorney fees.  The second circuit, however, has addressed an analogous situation.  In <u>C.H. Robinson Co. v. Alanco Corp.</u>, Robinson, a produce seller, filed a PACA claim to recover more than $200,000 in unpaid produce purchases from the bankrupt Alanco Corp, a produce buyer.  239 F.2d 483, 485 (2d Cir. 2001).  When Robinson settled his PACA trust

claim with Alanco, Mark Mandell, acting as trustee for the PACA trust, turned

over the remaining proceeds Alanco had left to Robinson, withholding $18,960.57.

Id.  Mandell then applied to the district court to enforce an attorney's lien on the

$18,960.57.  Id.  The district court denied Mandell's motion.  Id.

On appeal, Mandell argued that he was entitled to $18,960.57 as

payment for fees he earned performing necessary services to collect Alanco's

accounts receivable, which were held in trust for the benefit of Robinson under

PACA.  Id. at 486.  Mandell also contended that his services were in fulfillment of

Alanco's duty to the PACA trust beneficiaries and solely for their benefit, and that

he was entitled to be paid out of the trust res under general principles of trust law.

Id.

The Second Circuit disagreed.  The court acknowledged that

"blackletter trust law" provides that a "trustee can properly incur expenses which

are necessary or appropriate to carry out the purposes of the trust and are not

forbidden by the terms of the trust."  Id. (quoting Restatement of Trusts (Second)

§ 188 (1957)).  But PACA is meaningfully different.  Id. at 487 ("Trusts created

under PACA are statutory trusts, and common law trust principles are not

applicable if they conflict with the language of the statute, the clear intent of

Congress in enacting the statute, or the accompanying regulations.").  In fact, the

only reason Congress labeled PACA claims as "trusts" was to strengthen a produce

23

seller's contractual rights in bankruptcy.  Id.; see also H.R. Rep. No. 543, 98th

Cong., 2d Sess. 3 (1983) (explaining that given the proclivity for buyers to enter

bankruptcy, PACA was intended to "increase the legal protection for unpaid sellers

and suppliers of perishable agricultural commodities" in bankruptcy proceedings).

Additionally, the Second Circuit found that the accompanying

regulations directed that PACA trustees have a duty under PACA to pay the full

amount of the debt owed to PACA claimants before paying any other creditors

(e.g., attorneys).  Id. at 487–88.  For example, the court cited 7 C.F.R.

§ 46.46(a)(2), which defines "dissipation" of trust assets as "any act or failure to

act which could result in the diversion of trust assets or which could prejudice or

impair the ability of unpaid [sellers] to recover money owed in connection with

produce transactions."  Id.  The court also referenced 7 C.F.R. § 46.46(d), which

states that "[c]ommission merchants, dealers, and brokers are required to maintain

trust assets in a manner that such assets are freely available to satisfy outstanding

obligations of perishable agricultural commodities."  Id. at 488.  Because

Mundell's withholding of his attorney fees left Alanco unable to satisfy the

remainder of Robinson's PACA claim, Mundell impaired Robinson's ability to

recover the money owed under PACA.  Id.  The Second Circuit concluded:

"Allowing a defunct PACA trustee to pay other creditors [i.e., their attorneys] with

PACA funds before the seller [PACA claimant] is paid in full would frustrate

[Congress's] purpose, and would be contrary to the language of PACA and its accompanying regulations."  Id.  As such, Mundell, as the PACA trustee, was not able to use PACA funds to pay attorney fees incurred in collecting accounts receivable held in trust for a seller of perishable agricultural commodities.  Id. at 488–89.

Special Counsel's role in this litigation was similar in all relevant respects to Mundell's role in C.H. Robinson.  Per the bankruptcy court's Order Establishing a Deadline to File PACA Trust Claims, the court authorized Special Counsel to "take those steps reasonably necessary to preserve and collect the PACA trust assets" and "to facilitate the distribution of the collected PACA trust assets" by:

> (a) attempting to determine the extent to which assets are PACA trust assets, including filing or defending adversary proceedings including declaratory judgment actions,
> (b) examining PACA trust claims filed by alleged PACA trust beneficiaries, and objecting to those claims where appropriate,
> (c) collecting the Debtors' accounts receivables, including filing adversary actions, and
> (d) liquidating PACA trust assets other than the accounts receivables into cash.

(Bankr. Dkt. # 52 at 8–9.)  Essentially, Special Counsel acted as a trustee for the PACA trust.  According to Black's Law Dictionary, a trustee is one who has legal title to property and "holds it in trust for the benefit of another and owes a fiduciary duty to that beneficiary."  Black's Law Dictionary (9th ed. 2009).

Black's also explains, "Generally, a trustee's duties are to convert to cash all debts and securities that are not qualified legal investments . . . [and] to protect and preserve the trust property, and to ensure that it is employed solely for the beneficiary, in accordance with the directions contained in the trust instrument." Id.  Because Special Counsel was required to take steps to preserve PACA trust assets for the benefit of PACA beneficiaries, Special Counsel acted as a trustee of the PACA trust.

Under the reasoning in C.H. Robinson, Special Counsel, acting as a trustee of the PACA trust, is not entitled to attorney fees paid out of the PACA trust.  Special Counsel "has a fiduciary obligation under PACA to repay the full amount of the debt owed to the PACA beneficiary."  See C.H. Robinson, 239 F.3d at 488.  Here, PACA trust beneficiaries had not received full payment when the bankruptcy court granted Special Counsel's First Interim Application for attorney fees.[6]  Only when PACA trust beneficiaries receive full payment may a PACA trustee use the remaining PACA trust funds to pay the trustee's attorney fees.  Any action before PACA trust beneficiaries receive full payment would directly violate the language of PACA and its regulations.

---

[6]        The parties do not address whether PACA beneficiaries had received full payment by September 25, 2012, the date of the bankruptcy court's order granting the First Interim Application for attorney fees.

In conclusion, the Court finds that the bankruptcy court acted within its jurisdictional scope as defined by 28 U.S.C. § 1334 and exercised appropriate judicial power as outlined in 28 U.S.C. § 157.  Nevertheless, the bankruptcy court erred in granting Special Counsel his First Interim Application for attorney fees to be paid from the PACA trust assets (Bankr. Dkt. # 320).

<u>CONCLUSION</u>

For the foregoing reasons, the Court **AFFIRMS IN PART** and **VACATES IN PART** the bankruptcy court's Order granting First Interim Application for attorney fees (Bankr. Dkt. # 320).

IT IS SO ORDERED.

DATED: San Antonio, Texas, September 27, 2013.

_____
David Alan Ezra
Senior United States Distict Judge

27