IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| KINGDOM FRESH PRODUCE, INC. et al., | § § § § § § § § § § § § | CV NO. 5:12-CV-1127 CV NO. 5:14-CV-22 |
| Plaintiffs, | | |
| v. | | |
| DELTA PRODUCE, LP et al., | | |
| Defendants. | | |

ORDER DENYING WITHOUT PREJUDICE KINGDOM FRESH'S
MOTION FOR RECONSIDERATION

Before the Court is a Motion for Reconsideration of the Court's February 27, 2015 Escrow Order ("February 27 Order") filed by Kingdom Fresh Produce, Inc.; I Kunik, Co., Inc.; Rio Bravo Produce, Inc.; GR Produce, Inc.; and Five Brothers Jalisco Produce, Inc. d/b/a Bonanza 2011 ("Kingdom Fresh") (Dkt. # 51[1]). On March 24, 2015, the Court held a telephone conference on the motion. Scott E. Hillison and James Wilkins, Esqs., represented Kingdom Fresh; Maurleen W. Cobb and Mark C. H. Mandell, Esqs., represented PACA Special Counsel Craig Stokes ("Special Counsel" or "Stokes"). After careful consideration of the

---

[1] The Court refers to the docket numbers in No. 5:12-CV-1127. Identical documents have been filed in No. 5:14-CV-22. Special Counsel has also filed his response in 5:14-MC-899.

1

memoranda in support of and in opposition to the Motions, and in light of the parties' arguments at the conference, the Court, for the reasons that follow, **DENIES WITHOUT PREJUDICE** Kingdom Fresh's Motion for Reconsideration (Dkt. # 51.)

BACKGROUND

This matter arises out of the enforcement of a trust under the Perishable Agricultural Commodities Act of 1930 ("PACA"), 7 U.S.C. § 499(a)–(t).  This matter incorporates three PACA lawsuits that were filed in the United States District Court for the Western District of Texas against Delta Produce LP ("Delta Produce"), a local produce company.

On January 3, 2012, Delta Produce filed for Chapter 11 bankruptcy.  That month, the PACA claimants in the three PACA lawsuits consented to referral to the bankruptcy court for resolution of their PACA claims.  The bankruptcy court then appointed the Special Counsel to adjudicate the PACA claims.  Over the next two years, the Special Counsel submitted three separate applications for fees, all of which the bankruptcy court granted.  Kingdom Fresh appealed the three orders to this Court.

On September 27, 2013, this Court affirmed in part and vacated in part the bankruptcy court's order granting Special Counsel's First Interim Fee Application, which, per the parties' agreement, was also binding on the appeal of

the Second Interim Fee Application.  Order, In re Delta Produce, No. 5:12-CV-1127, Dkt. # 23 (W.D. Tex. Sept. 27, 2013); Order, In re Delta Produce, No. 5:13-CV-131, Dkt. # 7 (W.D. Tex. Mar. 12, 2013).  Special Counsel moved for reconsideration on October 11, 2013, which this Court denied on September 9, 2014.  Motion for Hearing, In re Delta Produce, No. 5:12-CV-1127, Dkt. # 24 (W.D. Tex. Oct. 11, 2013); Order, In re Delta Produce, No. 5:12-CV-1127, Dkt. # 42 (W.D. Tex. Sept. 9, 2014).  On September 22, 2014, this Court vacated the bankruptcy court's order granting Special Counsel's Third and Final Fee Application.  Memorandum Opinion and Order, In re Delta Produce, No. 5:14-CV-22, Dkt. # 15 (W.D. Tex. Sept. 22, 2014).  Special Counsel has appealed both rulings to the Fifth Circuit and is currently awaiting a decision.  In sum, funds in the amount of $380,409.99 are in controversy, $15,562.36 of which are deposited in the registry of the bankruptcy court.

On February 26, 2015, the Court held a hearing on Kingdom Fresh's Motion to Withdraw the Reference from Bankruptcy Court, as well as a Motion to Compel Special Counsel to Deposit the Disputed Funds into the Court's Registry.  Upon inquiry from the Court, counsel for Special Counsel advised the Court that the remainder of the funds had been placed by Special Counsel into his 401(K) account.

Although the Court denied the Motion to Withdraw Reference, the Court ordered in its February 27 Order that Special Counsel maintain the disputed funds in its 401(K) account until such time as the Fifth Circuit renders a final judgment on the fee awards or this Court or the Fifth Circuit directs otherwise. (Dkt. # 50.)

On March 4, 2015, Kingdom Fresh filed the instant Motion for Reconsideration (Dkt. # 51). On March 11, 2015, Special Counsel filed its Response (Dkt. # 53), and on March 16, 2015, Kingdom Fresh filed its Reply (Dkt. # 54).

## LEGAL STANDARD

Rule 60(b) sets forth six grounds for granting relief from a final judgment:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from operation of the judgment.

Fed. R. Civ. P. 60(b).  The decision "to grant or deny relief under Rule 60(b) lies within the sound discretion of the district court." Hesling v. CSX Transp., Inc., 396 F.3d 632, 639 (5th Cir.2005).

## DISCUSSION

Kingdom Fresh contends that the Court should reconsider and amend its February 27 Order pursuant to Rule 60(b)(1) on three bases: (1) mistake of law, in that the order improperly permits an ongoing violation of Rule 1.14 of the Texas Disciplinary Rule of Professional Conduct; (2) surprise, in that the order was changed from the ruling at the conclusion of the hearing based upon an ex parte communication from Special Counsel's counsel that deprived Kingdom Fresh notice and opportunity to be heard in violation of due process; and (3) mistake of fact, in that Special Counsel "disbursed" the funds to himself and his 401(K) stands as security, rather than "placing" the funds in his 401(K) account, and that Stokes Law Office no longer holds the funds as directed.  (Dkt. # 51 at 1–2; Dkt. # 54 at 4–6.)

I.   Mistake of Law

Kingdom Fresh first asserts that the February 27 Order directing that Special Counsel keep the disputed funds in his 401(K) account is based on a mistake of law because it permits an ongoing violation of Texas Rule of Professional Code 1.14.  (Dkt. # 51 at 4.)  Specifically, Kingdom Fresh relies on

5

subsection (c), which provides, in relevant part, "When in the course of representation a lawyer is in possession of funds . . . in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interest." (Id. (citing Tex. Code of Prof'l Conduct R. 1.14(c)).) Kingdom Fresh maintains that the funds in question are "disputed funds," and therefore any commingling with personal funds violates the Rule. (Id.)

Special Counsel counters that the funds in question are court-ordered fee awards, which do not constitute property belonging "in whole or in part to third parties" unless and until the Fifth Circuit rules in favor of Kingdom Fresh Group. (Dkt. # 53 at 3–6.) In so arguing, Special Counsel relies on subsection (a), which provides, in relevant part, "A lawyer shall hold funds . . . belonging in whole or in part to clients or third persons that are in a lawyer's possession in connection with a representation separate from the lawyer's own property." (Id. (citing Tex. Code of Prof'l Conduct R. 1.14(a)).) Special Counsel maintains that it reported Kingdom Fresh's allegations to the Texas Attorney Ethics Helpline and the Office of the Chief Disciplinary Counsel ("OCDC") and the OCDC labeled the communications a self-report case requiring no need for further investigation. (Id. at 2.)

Special Counsel further contends that, regardless, an argument for commingling only applies to funds that are not held separately from Special Counsel's personal funds. (Id. at 4.) Special Counsel clarifies that Kingdom Fresh is only entitled to $26,853.71 of the full $380,409.99 awarded in this case, and portion is held with $15,562.71 in the court registry and $11,291.35 in the Stokes Law Office's IOLTA account.[2] (Id.) Special Counsel argues that, because Kingdom Fresh does not have standing to receive any more than $26,853.71, it lacks standing to contest the location of the remaining monies. (Id. at 4–4.)

The Court can find no authority, nor do parties cite to any authority, that applies Rule 1.14 to the disposition of attorney's fees whose resolution is pending appeal. Rule 1.14 governs a lawyer's fiduciary duties when he is in possession of funds or property belonging, in whole or in part, to another party in connection with representation. See Tex. Code of Prof'l Conduct R. 1.14; see also Fry v. Comm'n for Lawyer Discipline, 979 S.W.2d 331, 333 (Tex. App. 1998) ("In summary, rule 1.14 requires an attorney who receives funds, which belong in whole or in part to a client or third person, to deposit them into a trust account and

---

[2] Special Counsel continues: "The remaining $353,556.28 was dispersed to the Stokes Law Office as agreed, without objection or appeal, as Court Ordered fees. Those additional funds can and will be disbursed when and if a proper court order is issued detailing how and to whom they should be paid. Mr. Stokes' 401K accounts stand as security for his ability to comply with such an order." (Dkt. # 53 at 4.)

promptly deliver the appropriate portion to the client or third person. . . . Moreover, and important to this case, is the requirement that if there is a dispute over the ownership of the funds, the attorney must keep the funds in the trust account until the dispute is resolved.").

In general, courts invoke Rule 1.14 when an attorney improperly deals with monies that third parties have sent the client via the attorney, fees paid in advance, or settlement funds.  See, e.g., James v. Commission for Lawyer Discipline, 310 S.W.3d 586, 597 (Tex. Ct. App. 2010) (finding a violation of Rule 1.14(b), even if the attorney did not represent the clients, when the attorney was the custodian of the clients' settlement funds and failed to timely communicate with them and give them their funds); McIntyre v. Comm'n for Lawyer Discipline, 247 S.W.3d 434, 440 (Tex. App. 2008) (finding a Rule 1.14(b) violation when attorney failed to forward a check in his possession to the IRS); Cluck v. Comm'n for Lawyer Discipline, 214 S.W.3d 736, 740 (Tex. App. 2007) (finding a Rule 1.14(a) violation when the attorney deposited an advanced fee which belonged, at least in part, to his client).  This Court can find no case construing funds as "disputed" and subject to Rule 1.14 when the attorney has taken funds by court order and that order is pending appeal.

In re Wilkins, No. 09-32188-H3-13, 2010 3834658, at *6 (S.D. Tex. Sept. 24, 2010), is illustrative of circumstances in bankruptcy context that would

render Rule 1.14 applicable.  There, the Court found the debtor's attorney had violated Rule 1.14(c) in handling a portion of his attorney's fees.  Id.  As the Court outlined, "any entity seeking compensation from a chapter 13 bankruptcy estate must file an application with the Court."  Id. at *4.  When the debtor's attorney failed to file a fee application for funds and nevertheless received $1,657.50 from his client, he violated Rule 1.14(c) because he failed to keep the funds separate from his own "until the fees <u>were allowed by the court</u>."  Id. at *6 (emphasis added).  However, the attorney did not violate Rule 1.14(c) when he commingled the funds that were properly awarded by the court.  See id.

      In general, if a party wants to prevent an opposing party from executing a court's judgment, it must seek a stay of the order during the pendency of the appeal.  Fed. R. Bankr. P. 8007(a); Fed. R. Civ. P. 62(d).  Without the stay, the judgment is executable, and the attorney is entitled to the funds he has been awarded.  The Court does not find that Rule 1.14 has any bearing on that framework.  Accordingly, there is no mistake of law that warrants reconsideration of the February 27 Order.  See Benson v. St. Joseph Reg'l Health Ctr., 575 F.3d 542, 547 (5th Cir. 2009) (noting that Rule 60(b)(1) is remedy for a legal mistake only where there is "an obvious error of law, apparent on the legal record" (internal quotation marks omitted) (quoting Hill v. McDermott, Inc., 827 F.2d 1040, 1043 (5th Cir. 1987))).

II.     Surprise

Second, Kingdom Fresh asserts that the fact that Special Counsel commingled the funds in his 401(K) account constituted a surprise, raised in an ex parte discussion with the Court.  (Dkt. # 51 at 6.)  Kingdom Fresh contends that, had it been able to address this issue on the record, it would have raised the following "serious concerns": (1) that the 401(K) account is not a trust account and therefore there are no fiduciary duties owed to the movants; (2) that Special Counsel can benefit personally from delays in the case by retaining interest earnings and Texas Access to Justice Foundation will not receive any interest; (3) that Special Counsel's spouse has a 50% interest in the 401(K) account because Texas is a community property state; (4) that the funds in the 401(K) could constitute a qualified retirement account that is exempt in a personal bankruptcy proceeding, giving Special Counsel the ability to discharge his obligations to movants; (5) that the funds in the 401(K) account to be subject to severe tax penalties if withdrawn before special counsel turns 59½; (6) that it remains unclear who owns the 401(K) and whether the firm or the individual is obligated to retain the monies; (7) that funds in a 401(K) account are invested in securities, placing the funds at risk of loss via market fluctuations; and (8) that the transfers of the funds from the PACA account to the IOLTA account to the 401(K) constituted three transfers in violation of Rule 1.14.  (Id. at 5–9.)

Special Counsel counters that administrative or procedural communications ordered by the Court are exempt from the ban on ex parte communications per Canon 3(A)(4)(b) of the Code of Conduct for United States Judges.  Special Counsel contends that the Court ordered Special Counsel's counsel to notify the Court of the manner in which the funds were being safeguarded, which the attorneys complied with as a procedural and administrative formality.  (Dkt. # 53 at 2–3.)

Although there is no clear definition of surprise in the federal rules, the Fifth Circuit has "limited reversible error from unfair surprise" in the appellate context "to situations where a completely new issue is suddenly raised or a previously unidentified expert witness is suddenly called to testify."  <u>Genmoora Corp. v. Moore Business Forms, Inc.</u>, 939 F.2d 1149, 1156 (5th Cir. 1991) (internal quotation marks omitted); <u>see also</u> <u>Manley v. Invesco</u>, No. H-11-2408, 2013 WL 416213, at *3 (S.D. Tex. Jan. 31, 2013) (applying <u>Genmoora</u> in the Rule 60(b)(1) context); <u>Bituminous Cas. Corp. v. Garcia</u>, 223 F.R.D. 308, 312 (N.D. Tex. 2004) (noting that neither Prof. Moore nor Profs. Wright and Miller provide any analysis of surprise in their treatises).  The precise location of the funds, which in either case are held in full by Special Counsel, is not a completely new issue: the issue here is whether Special Counsel can repay the funds if so ordered, which

Special Counsel maintains that he can and which the February 27 Order requires him to do if so ordered. (Dkt. # 53, Ex. A at 23:5–24; Dkt. # 50.)

Even under a less stringent, plain meaning of surprise, the circumstances here are insufficient to warrant reconsideration. At the hearing, counsel for Special Counsel informed the Court that she did not know "where th[e] funds [were] being held and in what accounts they [were] being held," but that "if the Court said pay the money, the money would be available." (Dkt. # 53, Ex. A at 25:4–10.) The Court then instructed her to check where exactly the funds were being held and to advise the Court accordingly. (Id. at 25:11–14.) This is exactly what occurred. The mere fact that the funds are held in Special Counsel's 401(K) account versus a trust account is not a surprise that affects the ruling.

Finally, the Court notes that the correspondence from Special Counsel's counsel advising the Court of the location of the funds was a permissible ex parte communication made for administrative purposes, which was directed in open court in the presence of Kingdom Fresh. Code of Conduct for U.S. Judges Canon 3(A)(4)(b). The Court therefore finds Kingdom Fresh's emphasis on the ex parte nature of the communication unavailing.

III.   Mistake of Fact

In its Reply, Kingdom Fresh argues that the February 27 Order is based on a mistake of fact: specifically, that Special Counsel "disbursed" the funds

12

to himself and his 401(K) stands as security, rather than "placing" the funds in his 401(K) account, and that Stokes Law Office no longer holds the funds as directed—instead, Special Counsel personally holds those funds.  (Dkt. # 54 at 4–5.)

The Court is unconvinced by Kingdom Fresh's distinction.  Special Counsel, through Stokes Law Office, was awarded fees for his work on the case.  Upon receiving those fees, Stokes Law Office apparently disbursed the funds directly to Special Counsel himself, which was well within the Law Office's authority as the court-ordered recipient of said fees.  It is irrelevant whether Stokes Law Office or Special Counsel himself is in possession of said fees; all that matters is that the fees are maintained and can be paid back should the Fifth Circuit affirm this Court and vacate the fee awards.  Special Counsel represents that "[f]unds that are more than sufficient to meet any Court's order for repayment are being held in Mr. Stokes' 401K accounts."  (Dkt. # 53 at 2.)  Accordingly, there is no mistake of fact that renders the February 27 Order invalid.

## CONCLUSION

For the foregoing reasons, the Court **DENIES WITHOUT PREJUDICE** Kingdom Fresh's Motion for Reconsideration (Dkt. # 51.)  However, out of an abundance of caution, the Court **ORDERS** Special Counsel to submit the following to the Court no later than Friday, March 27, 2015, at the close of

business: (1) an affidavit from Special Counsel to be seen only by the Court in camera, filed ex parte and under seal, outlining his finances and his ability to repay the funds, if so ordered, and the sources of those funds; and (2) an affidavit from Special Counsel to be distributed to opposing counsel, filed under seal, summarizing the ultimate dollar amount and/or percentage that Special Counsel is able to repay from a) funds outside of his 401(K) account and/or b) his 401(K) account.

**IT IS SO ORDERED.**

**DATED**: San Antonio, Texas, March 25, 2015.

_____
David Alan Ezra
Senior United States Distict Judge